IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FRED BOYD, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Case No.: |
| V. | ) | 2:21-CV-823 |
| | ) | |
| ALLIED UNIVERSAL SECURITY | ) | JURY TRIAL DEMANDED |
| AND INTERNATIONAL PAPER | ) | |
| MILLS, | ) | |
| | ) | |
| DEFENDANT(S). | | |

RECEIVED
2021 DEC 16 P 3:19
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## COMPLAINT

COMES NOW, Fred Boyd, by and through undersigned counsel, and files this Complaint, and shows the Court as follows:

## JURISDICTION

1. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

2. The plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(a)(4), 42 U.S.C. § 2000e *et seq*. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendants.

3. This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). The plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## PARTIES

5. Plaintiff, Fred Boyd, ("Plaintiff" or "Boyd") is a resident of Montgomery County, Alabama, and performed work for the Defendants in the counties composing the Northern District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Southern Division of the Northern District.

6. Defendant Allied Universal Security ("Defendant Allied") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

7. Defendant International Paper Mills ("Defendant Mills") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

8. Defendant Allied employed at least five hundred (500) people during the current or preceding calendar year.

9. Defendant Allied Universal had annual revenues over 18 billion dollars in 2020.

10. Defendant Mills employed at least five hundred (500) people during the current or preceding calendar year.

11. Defendant Mills had over 20 billion in revenue in 2020.

12. Both Defendants may be served with process by delivering a copy of the summons and complaint to their respective registered agents.

## FACTS

13. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

14. Mr. Boyd is a person of African Ancestry, colloquially referred to as Black.

15. Mr. Boyd began his employment with Allied Universal Security on or about May 1, 2020, as a Security Guard stationed at the International Paper Mills ("IPM") in Prattville, Alabama.

16. Two weeks after Mr. Boyd was hired, he was promoted to Supervisor.

17. On July 10, 2020, Mr. Boyd was promoted to Account Manager.

18. In December of 2020, a derogatory letter containing racist remarks was left at IPM's outbound gate by an anonymous person.

19. Mr. Boyd was called to pick up the letter and upon receiving it he took the letter to his Supervisor, Greg Sallas who directed Mr. Boyd to take the letter to IPM's human resources office.

20. Two hours later, Mr. Boyd and Greg Sallas reviewed the security cameras but were unable to locate the perpetrator.

21. The following day the human resources office contacted Mr. Boyd and asked him to turn in all copies of the letter.

22. IPM's legal team initially instructed Mr. Boyd not to inform Allied Universal Security about the letter and later reversed that instruction.

23. Pursuant to Mr. Boyd's duties as Account Manager he told Allied Universal about the letter.

24. Between December 2020 and January 2021, Mr. Boyd received no warning or job performance discipline of any kind.

25. During Mr. Boyd's employment all of his performance appraisals met expectations.

26. Prior to February 4, 2021, Mr. Boyd heard from several co-workers that IPM wanted to re-hire Dwayne Hutchison, a white male, as Account Manager.

27. Christina Patterson, lead officer at IPM's outbound gate, received a Facebook message from Mr. Hutchinson indicating that he would return to the Account Manager role if given a pay increase.

28. Justin Dyches, Rover Patrol, also received a Facebook message from Mr. Hutchinson indicating that he would return to the Account Manager role if given a pay increase.

29. On February 4, 2021, Mr. Boyd received a phone call from Sean Lewis, General Manager of Allied Universal, asking Mr. Boyd to report to the downtown Montgomery work site.

30. Upon arriving at the work site Mr. Boyd was placed on a call with Charles Kirby, Allied Universal Regional Director, and Latrina Mormon, Allied Universal Human Resources staff.

31. Mr. Kirby explained to Mr. Boyd that Mark Oswalt of IPM wanted to hire a different account manager because IPM was unhappy with how Mr. Boyd handled the December letter.

32. February 4, 2021, was the first time Mr. Boyd was made aware of his employer's dissatisfaction with his job performance.

33. Mr. Lewis told Mr. Boyd that as of February 4, 2021, he was terminated.

34. At the time of Mr. Boyd's termination, he was a salaried employee making $45,000 a year.

35. Mr. Lewis offered Mr. Boyd a guard position that paid $10-$12 an hour and a supervisor position in Troy, Alabama that paid $18.00 an hour.

36. On February 5, 2021, Mr. Hutchison, was re-hired to replace Mr. Boyd.

## CLAIMS FOR RELEIF

## COUNT I - TITLE VII RACE TERMINATION

37. Plaintiff incorporates by reference and realleges each of the allegations contained in paragraphs 8 through 36 above.

38. Plaintiff is a person of African ancestry colloquially known as black or African American.

39. Plaintiff was qualified for the position of Account Manager.

40. Defendants terminated Plaintiff's employment.

41. After terminating Plaintiff's employment, Defendants placed a person who was of European Ancestry, colloquially known as white, in the position of Account Manager.

42. Plaintiff's Race was a motivating factor in Defendants' decision to terminate Plaintiff's employment.

43. Defendants' proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendants' discriminatory motive.

44. Defendants' actions in terminating Plaintiff, in whole or part, because of his race was a violation of Title VII.

45. Because of Defendants' violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT II - 42 U. S. C. § 1981 TERMINATION

46. Plaintiff incorporates by reference and realleges each of the allegations contained in paragraphs 8 through 31 above.

47. Plaintiff is a person of African ancestry.

48. Plaintiff was qualified for the position of Account Manager.

49. On or about February 4, 2021, Defendants terminated Plaintiff's employment.

50. After terminating Plaintiff's employment, Defendants placed a person who was of European Ancestry, colloquially known as white, in the position of Account Manager.

51. Defendants' actions in terminating Plaintiff, in whole or part, because of his race was a violation of 42 U. S. C. § 1981.

52. Because of Defendants' violation of 42 U. S. C. § 1981, Plaintiff has been damaged, suffering loss of pay, and benefits.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys and those acting with the Defendants and at the Defendants' request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

B. Grant Plaintiff a permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys and those acting with the Defendants and at the Defendants' request from continuing to violate the terms of Section 1981;

C. Enter an Order requiring the Defendants to make Plaintiff whole by awarding him front-pay, back pay (plus interest), compensatory damages, punitive damages, special damages, and/or nominal damages, injunctive and declaratory relief, and benefits.

D. Plaintiff further prays for such other relief and benefits as the cause of justice may require including, but not limited to, an award of costs, attorneys' fees and expenses.

E. Any different or additional relief as determined by the Court to which Plaintiff is entitled.

/s/ Kira Fonteneau
Kira Fonteneau (FON007)

**OF COUNSEL:**

Barrett & Farahany
2 20th N. St. Suite 900
Birmingham AL 35203

## PLEASE SERVE DEFENDANTS AS FOLLOWS

**Allied Universal Security**

**Registered Agent: Prentice Hall Corporation System Inc.**

**641 South Lawrence Street**

**Montgomery, AL 36104**


**International Paper Mills**

**Registered Agent: CT Corporation System**

**2 North Jackson St., Suite 605**

**Montgomery, AL 36104**